JOHN BENO COMPANY, Plaintiff, Appellee, v. EDWARD L. PERRIN, Defendant, BUD WHITNEY, Intervener, Appellant.

No. 43087.

717

APRIL 7, 1936.

Paul E. Robertson, for appellant.

Frank D. Capel and Allen Ardell, for appellee.

PARSONS, J.—John Beno Company, plaintiff herein, on October 26, 1934, sued out a writ of attachment from the municipal court of the city of Council Bluffs, alleging therein that there was owing the plaintiff $205.48, with interest at 6 per cent from August 6, 1932, and that the defendant was about to remove permanently out of the city, and refused to pay or secure the debt due the plaintiff. The writ was issued and was served by garnishment upon W. C. Stuhr and Ed Hubbard, clerks at the sale by auction, which sale had been advertised as the sale of defendant. The defendant was a farmer living near Council Bluffs.

Bud Whitney, intervener herein, on October 30, 1934, filed a petition of intervention in the suit, setting forth that Stuhr and Hubbard were the clerks of a public sale held at the residence of Perrin, and were served with notice of garnishment on the theory they were supposed debtors of Perrin, or had property in their hands belonging to Perrin; and that the garnishees had deposited $300 of the funds in their hands with the court by stipulation of all parties concerned, to be held by the clerk

of court pending the outcome of the issues involved, and pending the further orders of the court and discharge of the garnishees. It was further alleged by the intervener that on the 23d day of October, 1934, he purchased from Perrin for $1,775 the property being sold, and that Perrin delivered a bill of sale of the same to intervener, and that the money was paid to Perrin by intervener by check, marked Exhibit A, and that after the delivery of said bill of sale and the payment of the purchase price, all the property sold had been delivered to the intervener, and on October 23, 1934, he took possession thereof, and cared for same and exercised dominion and control over the property; that the intervener had fixed a sale of said property to be held on October 27, 1934, and employed clerks for such sale, and an auctioneer, and that the said $300 was held by the clerk of the court as a part of the proceeds of the sale of the property described in the bill of sale; that Perrin had no right, title, or interest in the property at the time of the sale, and that the clerks were not indebted to Perrin in any sum whatever at the time of the notice of garnishment, and prayed judgment for the $300 deposited with the clerk of the court; and that the court make such orders in relation to the funds as it deemed right and necessary to protect the interest of the intervener, including the judgment against plaintiff for costs.

The plaintiff filed its answer and cross-petition to the petition of intervention, alleging that it incorporated each and every allegation contained in its petition in the case; denied that Bud Whitney, the intervener, had possession of the personal property alleged to have been transferred to him by Perrin; and that said property was the property of Perrin up to and including the time of sale on October 27, 1934, in the possession and under the control of Perrin, alleging that the sale to Whitney, intervener, was not filed for record as required by law, and that Perrin at all times held out the personal property as belonging to him, with the knowledge and consent of Whitney, intervener, and with the intent of Perrin and Whitney to defraud and delay payment to the existing creditors, and especially plaintiff; and further alleged that the intervener and Perrin were contriving to delay and defraud creditors of Perrin, especially the plaintiff, and that the transfer was fraudulent, and was all the personal property then owned by Perrin, and

was made to prevent the creditors from attaching the same, and for the purpose of delaying the creditors from collecting their claims; and that Whitney, for the purpose of defrauding existing creditors, had failed to record the bill of sale, and had advertised the sale of the property on premises then occupied by Perrin, with the intent to defraud the creditors of Perrin. It further alleged that Whitney, with the intent to delay and defraud existing creditors, had allowed the defendant to retain possession, care, and control of said personal property; and prayed for the court to declare the alleged sale to be null and void as to plaintiff, and to set aside said sale because of fraud, and that the personal property be declared to be the property of Perrin, and subject to the rights of plaintiff as an existing creditor, and that the petition of intervention be dismissed.

The plaintiff also filed a cross-petition incorporating by reference all the allegations of its petition, and that it was a creditor of Perrin on the 23d day of October in the sum of $232.18, and that Whitney, intervener, had contrived to delay and defraud the creditors of Perrin, and did knowingly aid and assist Perrin in the fraudulent transfer of the personal property to Whitney, being all the personal property of Perrin set forth and described in the petition of intervention; and that the bill of sale was kept off the record for the purpose of defrauding, and that Whitney, with the intent to defraud the existing creditors of Perrin, and this plaintiff, advertised the sale of the said personal property of Perrin and in Perrin's name, and that Whitney allowed this to be done with the intent of defrauding creditors; and that because of said fraudulent acts the plaintiff, as a creditor of Perrin, was deprived of collection of his claim against Perrin, and prayed for judgment against Whitney in the amount of $232.18, with costs therein. Whitney filed a reply denying all the allegations of the plaintiff's pleadings; denied that the sale was fraudulent; and also filed an answer to the cross-petition, denying each and every statement therein, and specifically denied that he contrived to delay and defraud the creditors of Perrin.

Writ of attachment was issued October 26, 1934, and on October 31, 1934, the following proceedings were had in court: Defendant's motion to discharge the attachment was submitted, and overruled, and the following stipulation was entered, to wit:

"It is stipulated in open court that the garnishees herein, W. C. Stuhr and Ed Hubbard, shall pay into court the sum of $300 to be held pending the issues herein, however, said payment shall not prejudice the rights of any party hereto, or of any person who may hereafter become a party to this action, and it is agreed and stipulated that upon payment by said garnishees into court of said sum of $300, said garnishees shall be discharged from further liability."

Whitney had filed his petition of intervention the day before, and hence was then a party. In due time the matter came on for hearing before the court, on November 16, 1934.

In the evidence it appears that Perrin gave on October 23, 1934, a bill of sale of all the property he had; that Perrin was living on a farm near Council Bluffs; that at that time Whitney gave to Perrin a check or draft for $1,775, payable to the order of Perrin, which went through the bank, bearing the indorsement of Perrin. It also appears that this bill of sale was not of record, and no notice of it was given to any one; that a public sale was held Saturday, October 27, 1934, so the bill of sale was given on Tuesday, and the sale was held on Saturday.

It further appears that upon receipt of this bill of sale Whitney made arrangements to hold a sale; that he went to J. H. McMurray, an auctioneer, to hire him to conduct the sale; that by an arrangement made between McMurray and Whitney the sale was advertised by publication in the newspapers and otherwise, as a sale of Perrin, the advertisement being headed, "Public Sale on Beno Farm 4 miles southeast of Council Bluffs", and advertising all of the property claimed by Whitney, the advertisement being signed, "Ed Perrin, Proprietor" (the defendant in the attachment case) and "McMurray & Putnam, Auctioneers", and advertised for sale twenty-six head of cattle, five horses and mules, six sows and eight shoats, machinery and tools, household goods, and miscellaneous articles, and contained the statement: "I am moving to Indiana and will sell everything from cellar to garret to high bidder."

It also appears that Perrin remained on the farm up until after the day of the sale; that he was present at the sale; and that some time between Tuesday and the day of the sale Whitney sent several persons to the farm to help care for the stock, and that so far as the public was concerned, there was no notice.

to any one that the sale was not the sale of Perrin, and that further the sending of the persons there to help care for the stock and to fix up the place for the sale would not be in any sense of the word an apparent change of possession, because Perrin was there also; and it appears further that while this sale was in progress the garnishment in this case was made.

It further appears that the judgment in favor of plaintiff was taken against Perrin on November 7, 1934, in the sum of $232.18, and costs amounting to $20.80. On November 28, 1934, the court entered the judgment, appealed from, reciting therein judgment against the defendant, the fact that the case came on for trial on November 16, 1934, and as to the filing of the further pleadings by the intervener and plaintiff, and as to the filing of briefs and arguments, and on the 28th day of November the case was fully submitted, trial by jury being waived, and' the court found for the plaintiff and against the intervener, dismissing his petition; and reciting in his decision that plaintiff have judgment against Bud Whitney, intervener, dismissing his petition of intervention; and that plaintiff have judgment for costs of suit; and that the money paid into court by the garnishees be sequestered and condemned and applied in payment of plaintiff's judgment against Edward L. Perrin; and that the intervener excepted. From this judgment or order, the intervener appealed to this court.

It thus appears from the record, without question, that even if the intervener did in the first instance, in good faith, purchase from the defendant, Perrin, the property involved by having a sale advertised under the name of Perrin, and as Perrin's property, he assisted in keeping this from the knowledge of the defendant's creditors; and it further appears in the record that the plaintiff in this case had no notice or knowledge of the matter until he saw the advertisement of Perrin, and that plaintiff then promptly took steps to protect itself by suing out a writ of attachment to secure its claim, for the reason, undoubtedly, that it had been advertised that Perrin was going to Indiana and was selling everything he had. This in our opinion, justified the attachment, even had a question been raised about the propriety or legality of an attachment. The money paid into court was the proceeds from this sale; the men garnished were charged with the sale as clerks, collecting all the money. There is some doubt, perhaps, under the record,

as to just exactly the amount they had in their hands at the moment of garnishment, but this was the most practical way of collecting under the attachment. We think the record shows that sufficient amount was collected by the clerks to fully cover the sum paid into the court by the garnishees, and that this sum so paid into the court was practically agreed to be an adjustment of the amount the garnishees were liable for under the garnishment, having been taken by the consent of all parties, including the intervener. So on the whole record, we are satisfied that the decision of the lower court was right under the rules of law laid down in Liddle & Carter v. Allen, 90 Iowa 738, 57 N. W. 603; Goll & Frank Co. v. Miller, 87 Iowa 426, 54 N. W. 443; Slimmer & Thomas v. Lawler, 205 Iowa 813, 218 N. W. 516.

This case was submitted to the court without intervention of a jury; the court had the right to take into consideration all of the facts set forth herein with every legitimate inference to be drawn therefrom. The intervener's bill of sale was no protection to him, it did not amount to any more than if it had been a verbal transfer. The statute requires such instruments be put of record, that the world, including attaching creditors, may have notice of it. The court had a right to conclude as it did from all these transactions, and the fact that the sale was held in the name of Perrin, that the intervener, Whitney, was a party to it, and held the sale in that way. Therefore, there was sufficient basis of fact in the evidence to warrant the court to hold as it did. For the reasons pointed out, the decision appealed from is hereby affirmed.—Affirmed.

DONEGAN, C. J., and KINTZINGER, ALBERT, HAMILTON, MITCHELL, and STIGER, JJ., concur.